IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

      Plaintiff,

v.                                                                      Civil Action No. 2:24-cv-218
                                                                        Judge _____

**U.S. SPECIALTY INSURANCE COMPANY;
WEST VIRGINIA SECONDARY SCHOOLS
ACTIVITIES COMMISSION; BERNIE DOLAN;
RENEE REED, on behalf of the
ESTATE OF GREGORY B. REED;
WAYNE RYAN; CINDY DANIEL; and
HEATHER ENOCH,**

      Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), by counsel, Perry W. Oxley, J. Jarrod Jordan, Zachary T. Ramey, and the law firm of Oxley Rich Sammons, PLLC, files its Complaint for Declaratory Judgment and states as follows:

### Parties, Jurisdiction, and Venue

1. National Union is an insurance company organized and existing under the laws of the State of Pennsylvania, with its principal offices in New York, New York. National Union is registered to do business and sell insurance in West Virginia.

2. U.S. Specialty Insurance Company ("USSIC") is a Texas insurance company registered to do business and sell insurance in West Virginia. USSIC's principal place of business and citizenship is Texas.

1

3. The West Virginia Secondary School Activities Commission ("WVSSAC") is West Virginia's governing body of and for interscholastic high school sports and marching bands with its principal place of business in Parkersburg, West Virginia.

4. Heather Enoch is, upon information and belief, a resident of Wood County, West Virginia and a current or former employee of WVSSAC.

5. Bernie Dolan is the Executive Director of the WVSSAC and is a resident of West Virginia.

6. Gregory B. Reed, deceased, was an Assistant Executive Director for WVSSAC and was a West Virginia resident.

7. Renee Reed was qualified as the Administratrix of the Estate of Gregory B. Reed on or about February 15, 2023. Renee Reed is a West Virginia resident.

8. Wayne Ryan is an Assistant Executive Director for WVSSAC and is a West Virginia resident.

9. Cindy Daniel is an Assistant Executive Director for WVSSAC and is a West Virginia resident.

10. On or about April 5, 2023, Heather Enoch filed a Complaint in the Circuit Court of Wood County, West Virginia against WVSSAC, Bernie Dolan, Renee Reed, on behalf of the Estate of Gregory B. Reed, Wayne Ryan, and Cindy Daniel ("the Enoch Suit").

11. In that Complaint, Heather Enoch has alleged, *inter alia*, that WVSSAC and its agents and representatives have created a hostile work environment and engaged in discrimination against her in violation of West Virginia law.

12. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §§ 1332 and 2201. The amount in controversy exceeds $75,000. Specifically, underlying Plaintiff Heather

Enoch claims damages in the Enoch Suit from WVSSAC and its employees and agents, which she claims are in excess of $75,000.  Moreover, the costs of defense, including attorney's fees, exceeds $75,000.

13. Venue in this District is proper under 28 U.S.C. § 1391. The National Union Policy and the USSIC Policy were issued to insure WVSSAC and its agents and employees, which has its principal place of business in Parkersburg, Wood County, West Virginia.  Further, the underlying alleged wrongful acts for which coverage is sought occurred in Wood County, West Virginia.

14. This Action is brought pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201.

15. In accordance with Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, this Court has the power and authority to grant or issue judgments for declaratory relief in cases over which it has jurisdiction, where this Court deems such declaratory judgment to be appropriate.

16. 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

17. In the instant case, as shown below, an actual controversy exists such that a binding declaration of rights by this Court is proper as National Union and USSIC dispute the impact of the opposing "other insurance" clauses in the two (2) Policies at issue.

18. Accordingly, Jurisdiction and Venue are proper in this Court.

## Facts

### The National Union Policy

19. National Union Fire Insurance Company of Pittsburgh, PA issued policy number GL 006882274 to the State of West Virginia / West Virginia Secondary School Activities Commission ("the National Union Policy"). WVSSAC, Bernie Dolan, the Estate of Gregory B. Reed, Deceased, Wayne Ryan, and Cindy Daniel are named insureds under the National Union Policy.  The National Union Policy has an effective date which covers the alleged wrongful actions of WVSSAC and its agents.  *See* ***Exhibit A*** (the National Union Policy).

20. The National Union Policy provides for certain liability coverage for the Enoch Suit, subject to the terms, conditions, and limitations of the National Union Policy for the named insureds set forth in Paragraph 19, and subject to the terms of any previous reservation of rights letters sent to those named insureds listed herein.

21. Concerning the applicable "other insurance" provision in this matter, the National Union Policy states as follows:

> If a "**Named Insured**" has other primary insurance for the hazards covered by this policy, this policy does not apply to losses occurring before the expiration or termination date of the other insurance except to the extent that the amount of loss exceeds the limit of liability of the insurance, but then only for an amount not exceeding the difference between any higher applicable limit of liability stated in the schedule of this policy and the limit of liability of the other insurance.

<u>Id</u>. at Endorsement No. 2.

22. Further, the National Union Policy provides for the right of subrogation under the applicable insuring provision, which states:

> In the event of any payment under this coverage part, the Company shall be subrogated to the extent of such payment to rights of recovery therefor, and the **"insureds"** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **"insureds"**.

<u>Id</u>.  at p. 17.

4

**The USSIC Policy**

23. USSIC issued policy number 14-MGU-22-A55001 to the State of West Virginia / West Virginia Secondary School Activities Commission ("the USSIC Policy"). The USSIC Policy has a policy period from September 3, 2022, to September 3, 2023. *See* **Exhibit B** (the USSIC Policy) at Declarations.

24. Under the USSIC Policy, the term "Insured Organization" means "the **Named Organization** and any **Subsidiary**…" Id. at p. 3.

25. Under the USSIC Policy, the term "Insured Person" means any past, present, or future: (1) **Executive** or **Employee**, or (2) natural-person member of an **Advisory Board** formed by the **Insured Organization**." Id. at p. 3.

26. Under the USSIC Policy, the term "employee" means "any natural person compensated by the **Insured Organization** whose labor or service is engaged and directed by the **Insured Organization**, including part-time and seasonal employees. **Employee** also means any natural-person volunteer for the **Insured Organization** whose labor or service is engaged and directed by the **Insured Organization**." Id. at p. 2.

27. The USSIC Policy includes two Coverage Sections: the Directors, Officers and Private Company Coverage Section (the "D&O Coverage Section") and the Employment Practices Coverage Section (the "EPL Coverage Section"). Id. at p. 14; 22.

28. The Insuring Agreement of the EPL Coverage Section provides as follows:

EMPLOYMENT PRACTICES COVERAGE SECTION

EPL INSURING AGREEMENTS

**(A)** The Insurer will pay, to or on behalf of the **Insureds**, **Loss** arising from **Claims** first made against the **Insureds** during the **Policy Period** or the Discovery Period (if applicable) for **Employment Practices Wrongful Acts.**

    **(B)** The Insurer will pay, to or on behalf of the **Insureds, Loss** arising from Claims first made against the **Insureds** during the **Policy Period** or the Discovery Period (if applicable) for **Third Party Acts.**

    **(C)** The Insurer will pay, to or on behalf of the **Insured Organization, Crisis Costs** arising from **EPL Crises** first commencing during the **Policy Period**, up to the EPL **Crisis Costs** Sublimit set forth in Item 3(b)(v) of the Declarations.

*Id.* at p. 22. Under the Employment Practices Coverage Section of the USSIC policy, the aggregate limit of liability is $1,000,000 for Loss resulting from Claims first made during the same Policy Period. Id. at Declarations p. 1.

    29. For purposes of the EPL Coverage Section of the USSIC Policy, the terms "Discrimination" and "Employment Practices Wrongful Act" are defined as follows:

EPL DEFINITIONS

For purposes of this Employment Practices Coverage Section

    (A)   **Discrimination** means:
        (1)   any failure or refusal to hire, failure or refusal to promote, demotion or discharge of, or wrongful failure to grant tenure to, any natural person, or
        (2)   any limitation, segregation or classification of any **Employee** or applicant for employment in a way that would deprive or tend to deprive him or her of employment opportunities or otherwise adversely affect his or her status as an **Employee**,

based on such person's race, color, age, sex, disability, pregnancy, sexual orientation or preference, national origin, religion or other status that is protected pursuant to any applicable federal, state, local or foreign law. (For purposes of this EPL DEFINITION (A) and the coverage afforded under this Coverage Section for **Claims** against an **Insured Person** for **Employment Practices Wrongful Acts** in his or her **Outside Capacity** with respect to an **Outside Entity**, **Employee** will be deemed to mean any employee of such **Outside Entity**.)

    (B)   **Employment Practices Wrongful Act** means any **Discrimination, Retaliation, Sexual Harassment, Workplace Harassment, Workplace Tort, Wrongful Termination**, violation of the Family and Medical Leave Act or **Internet/Social Media Violation**:
        (1)   committed or allegedly committed against any **Employee** or applicant for employment with the **Insured Organization** by (i) an **Insured Person** in his or her capacity as such, or (ii) the **Insured Organization**;

or

        (2)   committed or allegedly committed against any employee of or applicant for employment with an **Outside Entity** by an **Insured Person** in his or her **Outside Capacity** with respect to such **Outside Entity**.

Id. at p. 22.

6

30. Under the USSIC Policy, the term "claim" is defined as follows:

(1) a civil proceeding commenced by service of a complaint or similar pleading

(2) an arbitration, mediation or other similar dispute resolution proceeding

(3) an administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

(4) a criminal proceeding commenced by the return of an indictment, information or similar document,

the receipt by an **Insured Person** of a target letter or similar document, including a subpoena, in connection with an investigation of such **Insured Person**,

(6) an official request for **Extradition** of an **Insured Person**, including the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**,

a written request or agreement to toll or waive any applicable statute of limitations in connection with any of the foregoing, or

(8) any written demand for monetary, non-monetary or injunctive relief that is not encompassed in Subsections (1) through (7) above and is not included as a **Claim** elsewhere in this Policy;

provided, that **Claim** will not include any labor or grievance proceeding subject to a collective bargaining agreement.

Id. at p. 1.

31. WVSSAC is an "Insured Organization" under the USSIC Policy as it is the 'Named Organization" on the Policy. Id. at p. 1 of Declarations.

32. Further, Bernie Dolan, Gregory B. Reed, Deceased, Wayne Ryan, and Cindy Daniel as current and former employees of WVSSAC, are "Insured Person(s)" under the terms of the USSIC Policy as well.

33. Further, as a request for a tolling agreement concerning the claims of Heather Enoch was made during the Policy Period of the USSIC Policy, it is a "Claim" as that term is defined under the USSIC Policy.

34. Enoch's allegations of discrimination and hostile work environment constitute "Employment Practices Wrongful Acts" under the USSIC Policy. Accordingly, coverage is

7

available for this Claim under the USSIC Policy, subject to the Policy's terms, conditions, and limitations.

35. Further, pursuant to Correspondence dated April 3, 2023, USSIC admits that the effective date of the USSIC Policy covers the alleged wrongful acts and omissions on the part of WVSSAC and its agents, and that coverage is afforded under the USSIC Policy, subject to its terms, conditions, and limitations.

36. Concerning the "other insurance" provision, the USSIC Policy states as follows:

> Except for personal umbrella policies maintained by **Insured Persons** and policies written specifically excess over this Policy, such coverage as is provided by this Policy will apply only as excess over and will not contribute with any other valid and collectible insurance. This Policy will apply specifically excess over and will not contribute with any valid and collectible insurance under which there is a duty to defend.

Id. at p. 12.

## COUNT I: THE DUTY TO INDEMNIFY UNDER THE USSIC POLICY

37. National Union repeats and re-alleges the preceding paragraphs as though fully set forth herein.

38. USSIC has taken the position that the "other insurance" provision in the USSIC Policy works to make the coverage afforded under the USSIC Policy "secondary", or only available after all applicable liability coverages under the National Union Policy have been exhausted.

39. However, under West Virginia law, these two (2) contrary "other insurance" provisions in the Policies at issue are considered "mutually repugnant" such that they cancel each other out. See Noland v. Virginia Insurance Reciprocal, 686 S.E. 2d 23, 31-32 (W.Va. 2009).

40. Accordingly, neither of these Policies converts to an excess policy and both the National Union and USSIC Policy are both considered primary policies under West Virginia law

8

and both insurers must share equally in the indemnity of the insured WVSSAC and its agents and employees up to the limits of the two (2) applicable Policies.

41. Therefore, a real and presently existing controversy exists as to coverage and indemnity under the USSIC Policy at issue. A resolution of this issue is necessary to determine the rights and liabilities of the parties.

42. Thus, National Union seeks a declaration from this Court that the USSIC Policy is a primary policy and that National Union and USSIC must share equally in the indemnity of the insured WVSSAC and its agents and employees up to the limits of the two (2) applicable Policies.

## COUNT II: THE DUTY TO REIMBURSE DEFENSE COSTS UNDER THE USSIC POLICY

43. National Union repeats and re-alleges the preceding paragraphs as though fully set forth herein.

44. As noted above, the USSIC Policy provides the following concerning EPL coverage:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

**EPL INSURING AGREEMENTS**

(A) The Insurer will pay, to or on behalf of the **Insureds**, **Loss** arising from **Claims** first made against the **Insureds** during the **Policy Period** or the Discovery Period (if applicable) for **Employment Practices Wrongful Acts.**

(B) The Insurer will pay, to or on behalf of the **Insureds, Loss** arising from Claims first made against the **Insureds** during the **Policy Period** or the Discovery Period (if applicable) for **Third Party Acts.**

(C) The Insurer will pay, to or on behalf of the **Insured Organization, Crisis Costs** arising from **EPL Crises** first commencing during the **Policy Period**, up to the EPL **Crisis Costs** Sublimit set forth in Item 3(b)(v) of the Declarations.

*Exhibit B* at p. 22.

45. The term "Loss" is defined in the USSIC Policy's general terms as:

9

> (U) **Loss** means **Defense Costs** and any damages, settlements, judgments or other amounts an Insured becomes legally obligated to pay as a result of a **Claim**, including:
>
> (1) pre- and post-judgment interest,
>
> (2) claimants' attorneys fees awarded pursuant to a court order or judgment and that portion of a settlement which represents claimants' attorneys fees, and
>
> (3) Designated Penalties, if and where insurable by law (as described below); provided, that **Loss** will not include any:
>
> 1. wages;
> 2. severance pay, payment for stock option or stock appreciation rights, or payment of insurance or employee benefits (other than as expressly provided in the Fiduciary Responsibility Coverage Section pursuant to Subsections (1), (2) and (3) of FIDUCIARY EXCLUSION (H));
> 3. taxes, fines or penalties, other than **Designated Penalties**;
> 4. amounts which constitute or are in the nature of disgorgement or restitution (including any profit or financial advantage to which an **Insured** was not legally entitled);
> 5. amounts incurred or imposed in connection with non-monetary or injunctive relief; or
> 6. amounts uninsurable under applicable law.
>
> Nothing in this GENERAL DEFINITION (U) will preclude coverage for Defense Costs incurred in Claims seeking amounts described in Subsections 3, 4, 5 and 6 above. For purposes 'of determining the insurability of Designated Penalties, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to the Claim and is most favorable to the Insureds in that regard, including the jurisdiction where (i) the Designated Penalties were awarded or imposed, (ii) the Wrongful Acts giving rise to the Claim were committed, (iii) the Insured Organization or Insurer is incorporated or has its principal place of business, (iv) the Insured Person resides, or (v) this Policy was issued.

Id. at p. 4.

46. This general definition is further modified by the EPL Coverage Section of the USSIC Policy:

> GENERAL DEFINITION (U) **Loss** is amended to include:
> (a) back pay awards and front pay awards, and
> (b) liquidated damages awarded under the Age Discrimination in Employment Act or Equal Pay Act,
>
> an **Insured** becomes legally obligated to pay as a result of a **Claim** for **Employment Practices Wrongful Acts**.

Id. at p. 25.

47. "Defense Costs" are defined in the USSIC Policy as follows:

    (G) **Defense Costs** means reasonable legal fees, costs and expenses consented to by the Insurer (which consent will not be unreasonably withheld) and incurred by an **Insured** in the investigation, adjustment, defense or appeal of a **Claim** against the **Insured**, including:

        (1) expert witness fees,
        (2) fees, costs and expenses incurred by an **Insured Person** to oppose or challenge his or her **Extradition**, and
        (3) premiums for appeal bonds, attachment bonds or similar bonds; provided, that **Defense Costs** will not include any overhead expenses, or any compensation or benefits of an **Insured Person**.

Id. at p. 2.

48. Further, the USSIC Policy provides that "**Defense Costs** are a part of **Loss** and any payment of **Defense Costs** under this Policy will reduce the applicable Limit(s) of Liability. **Defense Costs**, as incurred, will also be applied against any applicable Retention." Id. at p. 8.

49. Accordingly, the USSIC Policy includes defense costs in the definition of a recoverable "Loss."

50. The USSIC Policy has a self-insured retention for the first $50,000 of defense costs for a claim under the EPL Coverage. Id. at Declarations, p. 2.

51. As noted above, USSIC has taken the position that its Policy is "excess", and it has declined to contribute any sums for defense costs or indemnity to the insureds in this matter.

52. However, as the USSIC Policy is a primary policy, the costs of defense of the insureds in this matter must be split between National Union and USSIC under the terms of their respective Policies, beyond the $50,000.00 self-insured retention in the USSIC Policy.

53. National Union has paid the defense costs of the insured(s) in defense of the Claims of Heather Enoch in excess of $50,000 and is subrogated to the rights of the insured(s) to recover sums beyond the $50,000 self-insured retention from USSIC.

54. Therefore, a real and presently existing controversy exists as to indemnity and defense obligations under the USSIC Policy at issue. A resolution of these issues is necessary to determine the rights and liabilities of the parties.

55. Thus, National Union seeks a declaration from this Court that USSIC is required to pay its *pro rata* share of defense costs equally with National Union above and beyond the $50,000.00 self-insured retention in the USSIC Policy and that USSIC is required to reimburse National Union for half of the paid defense costs beyond the self-insured retention in the USSIC Policy.

### Prayer For Relief

**WHEREFORE**, Plaintiff National Union respectfully requests the Court to declare that, pursuant to the language of the Policies and pursuant to applicable law, the USSIC and National Union Policies are both primary insurance policies for the underlying claim at issue, requiring USSIC to share the indemnity and defense obligations with National Union to the insureds as stated herein. Plaintiff National Union prays that this Court will grant it Declaratory Relief as set forth in the instant Complaint and all other relief as this Court may deem proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

**By counsel,**

/s/ Perry W. Oxley
Perry W. Oxley (WVSB #7211)
J. Jarrod Jordan (WVSB #10622)
Zachary T. Ramey (WVSB #14382)
OXLEY RICH SAMMONS, PLLC
517 9th Street, Suite 1000
Huntington WV 25701
304-522-1138
poxley@oxleylawwv.com
jjordan@oxleylawwv.com
zramey@oxleylawwv.com
***Counsel for Plaintiff***